THE HONORABLE JAMES L. ROBART

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9   STEVEN OLSON,

10                    Plaintiff,

11        v.                                    No. 2:25-cv-01977-JLR

12   AMAZON WEB SERVICES, INC., in its          **AMAZON WEB SERVICES'**
     official capacity as a corporation; a resident of   **ANSWER TO PLAINTIFF'S**
13   Washington State and RAECHELLE             **COMPLAINT FOR**
     CLEMMONS,                                  **EMPLOYMENT**
14                                              **DISCRIMINATION AND JURY**
                      Defendants.               **DEMAND**
15

16        Defendant Amazon Web Services, Inc. ("AWS") files this answer to Plaintiff Steven
17
     Olson's complaint for employment discrimination ("Complaint").  To the extent that any allegation
18
     in the Complaint is not specifically admitted, the allegation is denied.  AWS answers the
19
     corresponding numbered paragraphs of the complaint as follows:
20
                                            **NATURE**
21
          Plaintiff Steven Olson ("Plaintiff") brings this action against Defendants Amazon Web
22
     Services, Inc. and Raechelle Clemmons for unlawful discrimination on the basis of religion,
23
     creating a hostile work environment, and retaliation for unlawful complaints of discrimination.
24
     These violations are in breach of Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 1981; and
25
     the Utah Anti-Discrimination Act, uta Code Ann. § 34A-5-106 ("UADA").  Plaintiff seeks
26
     declaratory relief, monetary, and punitive damages.
27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    **ANSWER:**  This is a statement of the case to which no response is required.  To the extent
2    a response is required, AWS denies that Plaintiff suffered any damages or is due any relief
3    whatsoever, under any theory.

4    **JURISDICTON, VENUE, AND PROCEDURAL PREREQUISITE**

5    1.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §
6    1331 because it arises under the Constitution, laws, and/or treaties of the United States.

7    **ANSWER:**  Paragraph 1 contains legal conclusions to which no response is required.  To
8    the extent a response is required, AWS admits that Plaintiff asserts claims under federal law.

9    2.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because
10   Defendant Amazon Web Services, Inc. resides in this District, where it maintains its principal
11   place of business and is subject to personal jurisdiction.

12   **ANSWER:**  Paragraph 2 contains legal conclusions to which no response is required.  To
13   the extent a response is required, AWS admits that it maintains its principal place of business in
14   Seattle, WA.

15   3.    All conditions precedent to filing the instant action have been fulfilled. On or about
16   January 11, 2024, Plaintiff timely filed a Charge of Discrimination with the Equal Employment
17   Opportunity Commission ("EEOC"), which was cross filed with the Utah Antidiscrimination and
18   Labor Division.

19   **ANSWER:**  Paragraph 3 contains legal conclusions to which no response is required.  To
20   the extent a response is required, AWS admits that Plaintiff filed a charge with the EEOC and the
21   Utah Antidiscrimination and Labor Division on January 11, 2024.

22   4.    On or about July 31, 2025, the EEOC issued Plaintiff a Notice of Right to Sue. This
23   action is being brought within 90 days of Plaintiff's receipt of his Notice of Right to Sue.

24   **ANSWER:**  Admitted.

25
26
27

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 2
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**PARTIES**

5.      Plaintiff Steven Olson is a current resident of Farmington, Utah and a citizen of the United States. At all times relevant, Plaintiff performed his work at Defendant Amazon Web Services, Inc. remotely from the state of Utah.

**ANSWER:**  AWS lacks sufficient information to form a belief as to the truth of Plaintiff's residency, and therefore denies the same.  AWS admits that Plaintiff performed his work at AWS remotely from the state of Utah.

6.      Plaintiff identifies as Mormon.

**ANSWER:**  AWS lacks sufficient information to form a belief as to the truth of Plaintiff's identification as Mormon and therefore denies the same.

7.      Upon information and belief, Amazon Web Services, Inc. ("Defendant Amazon Web Services") is a subsidiary of Amazon that provides on-demand cloud computing platforms and APIs to individuals, companies, and governments, headquartered at 410 Terry Ave. N., Seattle, Washington.

**ANSWER:**  AWS admits that it is a subsidiary of Amazon.com, Inc.  AWS admits the remaining allegations in Paragraph 7.

8.      Defendant Amazon Web Services is and was, at all times relevant herein, Plaintiff's "employer" within the meaning of all relevant Federal, State and local laws.

**ANSWER:**  Paragraph 8 contains legal conclusions to which no response is required.  To the extent a response is required, AWS admits that Plaintiff was employed by AWS from October 31, 2022 to September 8, 2023.

9.      Plaintiff was, at all times relevant herein, Defendant Amazon Web Services' "employee" within the meaning of all relevant Federal, State and local laws, including but not limited to Title VII.

**ANSWER:**  Paragraph 9 contains legal conclusions to which no response is required.  To the extent a response is required, AWS admits that Plaintiff was employed by AWS from October 31, 2022 to September 8, 2023.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

10.    At all relevant times, Defendant Raechelle Clemmons was the Manager for the ISV Accelerate team at Defendant Amazon Web Services, Inc. to whom Plaintiff directly reported when he was employed with Defendant Amazon Web Services, Inc. At all relevant times, Defendant Raechelle Clemmons was Plaintiff's direct supervisor and/or had supervisory authority over Plaintiff and had the ability/authority to affect the terms and conditions of Plaintiff's employment, including hiring, firing, promotion, and/or salary. Defendant Raechelle Clemmons actually participated in conduct giving rise to Plaintiff's discrimination, hostile work environment, and retaliation claims. Defendant Raechelle Clemmons is being sued herein in her individual and official capacities under Section 1981 and the Utah Anti-Discrimination Act.

**ANSWER:**  AWS admits that Defendant Raechelle Clemmons ("Defendant Clemmons") was employed with AWS as a Senior Manager, Partner Business Development from August 2022 through November 2024.  AWS admits that on November 15, 2022, Plaintiff began reporting to Defendant Clemmons, who had supervisory authority over him.  AWS admits that beginning on November 15, 2022 Defendant Clemmons was the manager overseeing the ISV Accelerate team at AWS.  AWS admits that Defendant Clemmons is being sued herein in her individual capacity. To the extent not specifically admitted, AWS denies the remaining allegations in Paragraph 10.

## ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION

### Plaintiff Begins Working at Amazon Web Services

11.    On or about October 31, 2022, Plaintiff was hired at Defendant Amazon Web Services as an ISVAx Senior Product Manager on the Onboarding and Delivery Team.

**ANSWER:**  AWS admits it hired Plaintiff on October 31, 2022 as a Level 7 Manager in the ISV Product Management team.  To the extent not specifically admitted, AWS denies the remaining allegations in Paragraph 11.

12.    As a Senior Manager, Plaintiff was responsible for managing the six Product Managers on the Onboarding and Delivery team.

**ANSWER:**  AWS admits that in his role Plaintiff managed up to six employees at AWS. To the extent not specifically admitted, Amazon denies the remaining allegations in Paragraph 12.

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 4
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

13.     Plaintiff was informed by his direct supervisors, Manager Cheyanne Johnson ("Manager Johnson") and Skip Manager Emily Tyack ("Skip Manager Tyack"), that they would soon begin maternity leave and prepared him for their absences.

**ANSWER:**  AWS admits that Plaintiff reported to Cheyanne Johnson for about one week prior to Johnson going out on leave.  AWS does not have sufficient information to determine what Plaintiff was "informed," and therefore denies the same.  To the extent not specifically admitted, AWS denies the remaining allegations in Paragraph 13.

### Plaintiff is Introduced to Defendant Manager Clemmons in Preparation for Manager Johnson and Skip Manager Tyack's Upcoming Maternity Leave

14.     In or about October 2022, Manager Johnson introduced Plaintiff to Defendant Raechelle Clemmons ("Defendant Manager Clemmons"), a white female who was Manager for the Co-Sell Accelerator Team ("CSA Team").

**ANSWER:**  AWS lacks sufficient information to determine when Cheyanne Johnson introduced Plaintiff to Defendant Clemmons and therefore denies the same.  AWS admits that Defendant Clemmons identifies as a white female who managed the Co-Sell Accelerator Team while Plaintiff was employed at AWS.

15.     Plaintiff was informed that Defendant Manager Clemmons would fill in as Manager for the ISV Accelerate team during Manager Johnson's upcoming maternity leave. Upon information and belief, Defendant Manager Clemmons identifies as a lesbian.

**ANSWER:**  AWS lacks sufficient information to determine what Plaintiff was "informed" and therefore denies the same.  AWS admits that Defendant Clemmons managed the ISV Accelerate team during Cheyanne Johnson's maternity leave.  AWS admits that Defendant Clemmons identifies as a lesbian.

16.     Initially, Defendant Manager Clemmons was friendly and even expressed her excitement to join the team and work with Plaintiff.

**ANSWER:**  AWS lacks sufficient information to whether Defendant Clemmons "was friendly" or "expressed her excitement" to work with Plaintiff and therefore denies the same.

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 5
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

### Plaintiff Shares He is Mormon

2    17.    However, this quickly changed in or about October 2022, when Plaintiff was asked

3    to present a set of slides to Defendant Manager Clemmons, Manager Johnson, and to his peers,

4    and direct reports about his background and interests.

5    **ANSWER:**    AWS lacks sufficient information to determine whether "this quickly

6    changed," and whether Plaintiff was "asked to present…about his background and interests" and

7    therefore denies the same.  To the extent not specifically admitted, AWS denies the remaining

8    allegations in Paragraph 17.

9    18.    One of these details Plaintiff shared was that he is fluent in Spanish and Portuguese.

10    **ANSWER:**    AWS lacks sufficient information to determine whether Plaintiff shared that

11    he was fluent in Spanish and Portuguese and therefore denies the same.

12    19.    When Manager Johnson asked Plaintiff where he learned Spanish, Plaintiff shared

13    that he learned it while previously serving as a missionary for the Church of Jesus Christ of Latter-

14    day Saints—revealing that he identified as Mormon.

15    **ANSWER:**    AWS lacks sufficient information to determine whether Chayenne Johnson

16    asked Plaintiff about where he learned Spanish and therefore denies the same.  AWS lacks

17    sufficient information about Plaintiff's response to any questions by Chayenne Johnson and

18    therefore denies the same.

19    20.    Immediately after sharing his religious beliefs, Plaintiff sensed a shift in Defendant

20    Manager Clemmons' demeanor. Defendant Manager Clemmons appeared visibly displeased and

21    uncomfortable for the remainder of Plaintiff's presentation.

22    **ANSWER:**    AWS lacks sufficient information to determine what Plaintiff "sensed" and

23    therefore denies the same.  AWS lacks sufficient information to determine how Defendant

24    Clemmons "appeared" and therefore denies the same.  To the extent not specifically admitted,

25    AWS denies the remaining allegations in Paragraph 20.

26

27

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 6
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

21.     Upon information and belief, Defendant Manager Clemmons developed a prejudice against Plaintiff based on his religious beliefs. Upon information and belief, Defendant Manager Clemmons believes that Mormons are anti-LGBTQ+.

**ANSWER:**  AWS denies the allegations in Paragraph 21.

### Defendant Manager Clemmons is Cold and Displays Discomfort Towards Plaintiff After He Reveals that He is Mormon

22.     Immediately after the presentation, Skip Defendant Manager Clemmons became cold and distant towards Plaintiff, and it quickly became clear to Plaintiff that Defendant Manager Clemmons now disliked him because of his religious beliefs.

**ANSWER:**  AWS denies the allegations in Paragraph 22.

23.     but Defendant Manager Clemmons was suddenly closed-off, cold, and hostile.

**ANSWER:**  AWS denies the allegations in Paragraph 23.

### Defendant Manager Clemmons' Treatment of Plaintiff Worsens After Manager Johnson and Skip Manager Tyack Leave for Maternity Leave

24.     In or about October 2022, Skip Manager Tyack began maternity leave.

**ANSWER:**  AWS admits that Emily Tyack began her maternity leave in or about November 2022.

25.     On or about November 15, 2022, Manager Johnson began maternity leave.

**ANSWER:**  Admitted.

26.     After Manager Johnson and Skip Manager Tyack went out on maternity leave, Defendant Manager Clemmons became increasingly hostile towards Plaintiff. She began harassing, humiliating, and belittling him in front of his peers and his team during meetings.

**ANSWER:**  AWS denies the allegations in Paragraph 26.

27.     For example, when Plaintiff asked questions during team meetings, Defendant Manager Clemmons retorted by condescendingly remarking, "I would expect you to know that, Steve."

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 7
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**ANSWER:**  AWS lacks sufficient information to determine whether Defendant Clemmons made the remark alleged in Paragraph 27 and therefore denies the same.  AWS denies the remaining allegations in Paragraph 27.

28.    Defendant Manager Clemmons frequently rolled her eyes and made gestures that expressed irritation with Plaintiff whenever he made suggestions and recommendations during team meetings and treated Plaintiff as though he were incapable and inexperienced. Yet, Plaintiff had more experience in the industry than Defendant Manager Clemmons.

**ANSWER:**  AWS lacks sufficient information to determine what Plaintiff means by that he had "more experience in the industry than Defendant Manager Clemmons" and therefore denies the same.  AWS denies the remaining allegations in Paragraph 28.

29.    Plaintiff's team members and peers sat there silently and appeared visibly uncomfortable by Defendant Manager Clemmons' unwarranted aggressive remarks and actions.

**ANSWER:**  AWS lacks sufficient information to determine how Plaintiff's team members "appeared" and therefore denies the same.  AWS denies the remaining allegations in Paragraph 29.

### Defendant Manager Clemmons Makes Disparaging, Discriminatory Remarks About People Who Identify as Religious in an Obvious Effort to Single- Out Plaintiff

30.    Defendant Manager Clemmons regularly made discriminatory remarks about the "ignorance" and "lack of education" of people who identified as religious in an obvious effort to intentionally single out Plaintiff due to the fact that he is Mormon.

**ANSWER:**  AWS denies the allegations in Paragraph 30.

31.    For example, during an offsite meeting, Defendant Manager Clemmons remarked, "I don't know how anyone in today's age can be religious," and stared at Plaintiff—once again in an obvious effort to single him out due to the fact that he is Mormon.

**ANSWER:**  AWS denies the allegations in Paragraph 31.

### Defendant Manager Clemmons Displays a Blatant Preference for White Team Members

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 8
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

32.    In addition to Defendant Manager Clemmons' disdain for Mormons, Plaintiff quickly discerned that Defendant Manager Clemmons preferred white team members.

**ANSWER:**  AWS lacks sufficient information to determine what Plaintiff "discerned" and therefore denies the same.  AWS denies the remaining allegations in Paragraph 32.

33.    Within the Onboarding and Delivery Team, two of the six Product Managers were Black, namely Ashley Sannon ("Product Manager Sannon") and Carla Franklin ("Senior Product Manager Franklin").

**ANSWER:**  AWS admits that Ashley Sannon and Carla Franklin, both of whom identify as black, were employed by AWS and supervised by Plaintiff.  To the extent not specifically admitted, AWS denies the remaining allegations in Paragraph 33.

34.    Defendant Manager Clemmons consistently questioned and micromanaged everything Product Manager Sannon and Senior Product Manager Franklin did and frequently questioned their decisions yet would often express confidence in the abilities of white team members and frequently praise their work and contributions.

**ANSWER:**  AWS admits that, at times, Defendant Clemmons praised the work and contributions of her team members.  AWS denies the remaining allegations in Paragraph 34.

35.    Defendant Manager Clemmons invited white Product Managers, including Ashley Wallace ("Product Manager Wallace") out to lunch, yet never invited Product Manager Sannon or Senior Product Manager Franklin to participate in such activities.

**ANSWER:**  AWS admits that when Ashley Wallace visited Dallas, TX where Defendant Clemmons lived, she invited her out to lunch.  To the extent not specifically admitted, AWS denies the remaining allegations in Paragraph 35.

36.    In addition, despite the fact that Senior Product Manager Franklin and Senior Product Manager, April Beaubouef ("Senior Product Manager Beaubouef"), a white female, were both leveled as L6 Senior Product Managers, Defendant Manager Clemmons frequently excluded

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 9
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Senior Product Manager Franklin from important discussions and often gave Senior Product Manager Beaubouef better and more frequent work opportunities.

**ANSWER:** AWS admits that, while Plaintiff was managing Carla Franklin and April Beaubouef they were both Level 6 employees. AWS admits that April Beaubouef identifies as a white female. Amazon denies the remaining allegations in Paragraph 36.

### Defendant Amazon Web Services Declares a Hiring Freeze

37.    In or about December 2022, Defendant Amazon Web Services declared a hiring freeze. This was an extremely rare occurrence.

**ANSWER:** AWS admits that it implemented a hiring freeze in late 2022. To the extent not specifically admitted, AWS denies the remaining allegations in Paragraph 37.

38.    Plaintiff noticed his peers and Defendant Manager Clemmons' peers react as they attempted to navigate the hiring freeze.

**ANSWER:** AWS lacks sufficient information to determine what Plaintiff "noticed" about his peers' reactions and therefore denies the same.

39.    When Plaintiff, who was still very new to Amazon Web Services, sought Defendant Manager Clemmons' guidance and requested her assistance as his manager, Defendant Manager Clemmons refused and curtly stated, "No, as an L7 manager you are expected to have that capability, Steve," in front of his peers.

**ANSWER:** AWS denies the allegations in Paragraph 39.

40.    Thereafter, Plaintiff worked with his team to implement appropriate plans, seeking input and guidance from others, and aligned with the actions of his peers and Defendant Manager Clemmons' peers.

**ANSWER:** AWS lacks sufficient information as to how Plaintiff worked with his team during this timeframe or what plans he may have implemented, and therefore denies the same.

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 10
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**Defendant Manager Clemmons Forces Plaintiff to Place**
**Senior Product Manager Franklin in Focus Due to Her Race**

41.    In or about December 2022, Defendant Manager Clemmons demanded that Plaintiff place Senior Product Manager Franklin, 1 of the 2 Black employees on the team, in "Focus," a step away from a Performance Improvement Plan, citing to the fact that she had cancelled meetings due to a family emergency, and was not "ramping up" as quickly as others. Senior Product Manager Franklin was experiencing a difficult family situation but still performing her job duties.

**ANSWER:**  AWS admits that Carla Franklin was placed into Focus based on performance gaps in December 2022.  AWS denies the remaining allegations in Paragraph 41.

42.    When Plaintiff pushed back and insisted that Defendant Manager Clemmons reconsider, as Senior Product Manager Franklin "had family issues going on that were significant," Defendant Manager Clemmons aggressively responded, "Absolutely not, she has to go in [Focus]."

**ANSWER:**  AWS denies the allegations in Paragraph 42.

43.    Yet, Defendant Manager Clemmons never insisted that any of the white Product Managers be placed in Focus despite the fact that several white Product Managers were repeatedly making mistakes or had family conflicts that affected their performance.

**ANSWER:**  AWS denies the allegations in Paragraph 43.

44.    For example, Product Manager, Josh Deese ("Product Manager Deese") was having a hard time with the culture changes at Defendant Amazon Web Services and was repeatedly making mistakes yet, Defendant Manager Clemmons never recommended he be placed in Focus.

**ANSWER:**  AWS admits that Josh Deese was not placed in Focus while Plaintiff was employed at AWS.  AWS denies the remaining allegations in Paragraph 44.

45.    In addition, even though Product Manager Leah Cronau ("Product Manager Cronau"), who was also experiencing family conflicts, failed to show up for several meetings and

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 11
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

failed to call ahead to let anyone know, a serious issue, Defendant Manager Clemmons never insisted that Product Manager Cronau, who is white be placed in Focus.

**ANSWER:**  AWS admits that Leah Cronau was not placed in Focus while Plaintiff was employed at AWS.  AWS admits that Leah Cronau  identifies as white.  Amazon denies the remaining allegations in Paragraph 45.

### Plaintiff Reports Defendant Manager Clemmons to Defendant Amazon Web Services Human Resources

46.    Immediately after, Plaintiff went to Sarah Lavelle ("HR Lavelle"), an L4 in Defendant Amazon Web Services Human Resources and reported that he did not think it was appropriate to place Senior Product Manager Franklin in Focus. Plaintiff was extremely confused about the way that Senior Product Manager Franklin was being singled out and why her personal circumstances were not taken into account, particularly given that such considerations were routinely extended to white employees such as Product Manager Cronau.

**ANSWER:**  AWS admits that Plaintiff expressed concerns to Sara Lavelle regarding Carla Franklin's placement in Focus.  AWS denies that Sara Lavelle was a Level 4 manager at this time.  AWS lacks sufficient information as to the remaining allegations in Paragraph 46 and therefore denies the same.

47.    Upon hearing about the significance of Senior Product Manager Franklin's difficult personal situation, HR Lavelle agreed that Senior Product Manager Franklin should not be placed in Focus at that time and set up a call with Skip Defendant Manager Clemmons to share the decision.

**ANSWER:**  AWS admits that Plaintiff had a call with Sara Lavelle and Defendant Clemmons about Carla Franklin's placement in Focus.  AWS denies the remaining allegations in Paragraph 47.

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 12
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

48.     During the scheduled meeting, HR Lavelle raised concerns about placing Senior Product Manager Franklin in Focus, especially due to the timing and circumstance of Senior Product Manager Franklin's family situation.

**ANSWER:**  AWS admits that Sara Lavelle asked questions related to Carla's placement in Focus.  AWS denies the remaining allegations in Paragraph 48.

49.     In response, Defendant Manager Clemmons condescendingly and aggressively insisted on proceeding with placing Senior Product Manager Franklin in Focus, intimidating HR Lavelle—who was ranked much lower as an L4, while Defendant Manager Clemmons was ranked as an L7.

**ANSWER:**  AWS denies the allegations in Paragraph 49.

50.     Upon information and belief, HR Lavelle's objection to unlawful employment practices held little weight due to the hierarchal disparity of HR Lavelle holding an L4 status and Defendant Manager Clemmons holding an L7 status—despite HR Lavelle previously recognizing to Plaintiff the inappropriateness of placing someone with a significantly difficult family situation in Focus while they were still performing at an adequate level.

**ANSWER:**  AWS denies the allegations in Paragraph 50.

51.     HR Lavelle appeared uncomfortable and awkwardly agreed to allow Defendant Manager Clemmons to proceed.

**ANSWER:**  AWS lacks sufficient information on how Sara Lavelle "appeared" and therefore denies the same.  AWS denies the remaining allegations in Paragraph 51.

52.     Plaintiff was disheartened that Defendant Amazon Web Services would allow Defendant Manager Clemmons to supersede HR's decision and disregard their objection against unlawful employment practices at Defendant Amazon Web Services.

**ANSWER:**  AWS lacks sufficient information on whether Plaintiff was "disheartened" and therefore denies the same.  AWS denies the remaining allegations in Paragraph 52.

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 13
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

53.     Recognizing HR Lavelle's fear of further speaking out against Defendant Manager Clemmons, Plaintiff stated, "Are you sure we want to do this, Sara [HR Lavelle]?"

**ANSWER:**  AWS lacks sufficient information regarding what Plaintiff "recognized" or the specific statements he made in the meeting with Sara Lavelle and therefore denies the same.

54.     Defendant Manager Clemmons cut Plaintiff off and demanded that Senior Product Manager Franklin be placed on Focus and ended the call.

**ANSWER:**  AWS denies the allegations in Paragraph 54.

55.     Thereafter, Defendant Manager Clemmons instructed Plaintiff to submit and upload the necessary documentation to initiate Senior Product Manager Franklin's placement in Focus.

**ANSWER:**  Admitted.

56.     After the meeting, Plaintiff hesitated, waiting for further comment from HR and delayed formally placing Senior Product Manager Franklin in Focus, as he still did not believe HR would allow Senior Product Manager Franklin to be placed in.

**ANSWER:**  AWS lacks sufficient information to determine whether and why Plaintiff hesitated before placing Carla Franklin into Focus and what he believed, and therefore denies the same.

57.     On or about December 28, 2022, after Defendant Manager Clemmons noticed that Plaintiff had not completed the submission, Defendant Manager Clemmons inappropriately went ahead and completed the submission herself, to initiate Senior Product Manager Franklin's placement in Focus.

**ANSWER:**  AWS denies the allegations in Paragraph 57.

**Plaintiff Refuses to Fire Senior Product Manager**
**Franklin or Engage in Discriminatory Employment Practices**

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 14
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

58.     For the next several months, Plaintiff observed that Senior Product Manager Franklin exceeded timelines, expectations, and outperformed everyone on the team—and far exceeded the performance of several white Product Managers on the team, including Senior Product Manager Beaubouef and Product Manager Wallace.

**ANSWER:**    AWS lacks sufficient information as to what Plaintiff "observed" and therefore denies the same.  AWS admits that Carla Franklin's performance improved while she was in Focus.  To the extent not specifically admitted, AWS denies the remaining allegations in Paragraph 58.

59.     In or about February 2023, Plaintiff attended a meeting with Defendant Manager Clemmons, and her acting manager, AWS Director and General Manager, Sachin Vora ("GM Vora").

**ANSWER:** AWS admits that Defendant Clemmons attended a meeting with Sachin Vora and Plaintiff before Carla Franklin was removed from the Focus coaching program.

60.     Despite Senior Product Manager Franklin's stellar performance, during this meeting, Defendant Manager Clemmons and GM Vora pressed Plaintiff to dishonestly place Senior Product Manager Franklin on a Performance Improvement Plan ("PIP") that she did not deserve, and to force her out of Defendant Amazon Web Services.

**ANSWER:** AWS denies the allegations in Paragraph 60.

61.     Yet, Defendant Manager Clemmons made no mention of placing any white employees who were not performing as well as Senior Product Manager Franklin on Focus or a PIP at that time.

**ANSWER:**    AWS lacks sufficient information to determine which employees Plaintiff believes "were not performing as well as Senior Product Manager Franklin" and therefore denies the same.  AWS denies the remaining allegations in Paragraph 61.

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 15
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

62.     Plaintiff pushed back, shared the supporting data and the quality of Senior Product Manager Franklin's work products, and insisted that given the the data and deliverables, it was impossible to state that Senior Product Manager Franklin's work failed to meet expectations when her work in fact, surpassed expectations.

**ANSWER:**  AWS lacks sufficient information to determine what Plaintiff "pushed back" on and therefore denies the same.  AWS denies the remaining allegations in Paragraph 62.

63.     Defendant Manager Clemmons and GM Vora pushed back, insisting that "someone" had to be terminated (in accordance with Amazon's "unregretted attrition" policy which sets a goal of replacing 50% of their employees each year to "raise the bar"), suggesting that if it was not Senior Product Manager Franklin, they would need to terminate someone else from his team, from Defendant Amazon Web Services.

**ANSWER:**  AWS denies the allegations in Paragraph 63.

64.     Plaintiff continued to push back and highlighted examples of Senior Product Manager Franklin's outstanding performance and completed deliverables.

**ANSWER:**  AWS lacks sufficient information to determine what Plaintiff continued to "push back" on and therefore denies the same.  AWS denies the remaining allegations in Paragraph 64.

65.     Thereafter, Defendant Manager Clemmons begrudgingly and reluctantly agreed to allow Plaintiff to take Senior Product Manager Franklin out of Focus—only after Plaintiff objected to Defendant Manager Clemmons' attempt to unlawfully force Senior Product Manager Franklin out of Defendant Amazon Web Services.

**ANSWER:**  AWS admits that Carla Franklin was removed from the Focus coaching program after improving her performance.  AWS denies the remaining allegations in Paragraph 65.

### Defendant Manager Clemmons Retaliates Against Plaintiff
### for Refusing to Wrongfully Terminate Senior Product Manager Franklin Due to Her Race

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 16
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1
2
3
4
5
6

66.     Immediately after, during one-on-one meetings, Defendant Manager Clemmons expressed anger and frustration with the fact that Plaintiff refused to wrongfully terminate Senior Product Manager Franklin and blamed Plaintiff for causing the team "more difficulty because you didn't manage out [Senior Product Manager Franklin]." Because the team had not met Amazon's unregretted attrition target, they were not allowed to back fill vacancies, which Defendant Manager Clemmons blamed on Plaintiff.

7

**ANSWER:**  AWS denies the allegations in Paragraph 66.

8
9
10
11

67.     Plaintiff sat there awkwardly and silently as Defendant Manager Clemmons reprimanded him, sharing the data regarding Product Manager Franklin's performance when he could.

12
13

**ANSWER:**  AWS lacks sufficient information to determine Plaintiff's reaction and therefore denies the same.  AWS denies the remaining allegations in Paragraph 67.

14
15
16
17
18
19

68.     In addition, after Plaintiff refused to pretextually terminate Senior Product Manager Franklin, Defendant Manager Clemmons went out of her way to push back on each and every decision Plaintiff made. For example, during this time, Plaintiff authorized the purchase of $14 business cards for an upcoming partner event. Immediately after Defendant Manager Clemmons learned of the purchase, she outrageously demanded he explain his reasoning for authorizing the purchase. There are many more well documented examples.

20

**ANSWER:**  AWS denies the allegations in Paragraph 68.

21
22

**Defendant Manager Clemmons Becomes Plaintiff's Permanent Manager
and Continues to Incessantly Harass and Belittle Plaintiff During Team Meetings**

23
24
25

69.     To Plaintiff's horror, in or about March 2023, the team learned that Manager Johnson would not be returning to her position at Defendant Amazon Web Services. Thus, Defendant Manager Clemmons would be Plaintiff's permanent Manager.

26
27

**ANSWER:**  AWS lacks sufficient information to determine how Plaintiff felt or when he learned about Defendant Cheyanne Johnson not returning to her former position in AWS and

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 17
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

therefore denies the same.  AWS admits that Chayenne Johnson did not return to her prior role and Defendant Clemmons remained in her role supervising Plaintiff in March 2023.

70.    During this time, Defendant Manager Clemmons continued to frequently harass and single out Plaintiff during team meetings by humiliating and belittling him in front of his peers and his entire team whenever he made suggestions or asked clarifying questions. It was clear that Defendant Manager Clemmons' remarks and behavior towards Plaintiff made his team and his peers feel awkward and uncomfortable, also sending a clear signal that they should distance themselves from him.

**ANSWER:**  AWS denies the allegations in Paragraph 70.

71.    In addition, Defendant Manager Clemmons assigned Plaintiff a number of unfavorable responsibilities, while non-Mormon Managers who had not refused to engage in discriminatory practices on several other teams received more favorable and interesting work.

**ANSWER:**  AWS denies the allegations in Paragraph 71.

**Plaintiff is Placed in Focus Due to His Religion and in Retaliation for**
**Refusing to Terminate Senior Product Manager Franklin Due to Her Race**

72.    Defendant Manager Clemmons continued to bring up her anger and frustration with Plaintiff for refusing to terminate Senior Product Manager Franklin during their one-on-one meetings.

**ANSWER:**  AWS denies the allegations in Paragraph 72.

73.    In or about May 2023, in retaliation for refusing to terminate Senior Product Manager Franklin, Defendant Manager Clemmons placed Plaintiff in Focus and outrageously cited that Plaintiff "didn't navigate the hiring freeze well." The hiring freeze occurred four months prior.

**ANSWER:**  AWS admits that in or around May 1, 2023 Defendant Clemmons, with the approval of Sara Lavelle, entered Plaintiff in a documented coaching program, called Focus, to help him improve his performance.  AWS denies the remaining allegations in Paragraph 73.

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 18
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

74.    Plaintiff was in complete shock, as nobody at Defendant Amazon Web Services navigated the hiring freeze any better than he did. Yet, Plaintiff was the only one placed in Focus because of it. It was clear to Plaintiff that he was being singled out because of his religion and because of his refusal to unlawfully single out and terminate a Black employee, as there was not adequate justification to place him in Focus.

**ANSWER:**    AWS lacks sufficient information to determine whether Plaintiff was in "shock" and therefore denies the same.  AWS denies the remaining allegations in Paragraph 74.

### Skip Defendant Manager Clemmons and Her Direct Reports
### Sabotage Plaintiff's Ability to Fulfill Focus Expectations

75.    Shortly after Defendant Manager Clemmons placed Plaintiff in Focus, he received a list of obligatory Focus expectations that he needed to complete to come out of Focus. Plaintiff was told that if he did not successfully complete each of these expectations within the specified deadlines, he would be placed on a Performance Improvement Plan, making him vulnerable to termination at Defendant Amazon Web Services.

**ANSWER:**    AWS admits that, as part of the Focus program, Plaintiff was assigned to complete several tasks.  AWS admits that if Plaintiff's performance did not improve, the next step would be to enter Pivot.  To the extent not specifically admitted, AWS denies the remaining allegations in Paragraph 75.

76.    It quickly became clear to Plaintiff that Defendant Manager Clemmons and her direct reports, including Manager Airlee Gigun ("Manager Gigun") were sabotaging his efforts. When Plaintiff scheduled meetings with his peers to review and sign-off on the work, others were accommodating and stated that the work met or exceeded expectations, but Manager Gigun would decline these meetings at the last minute or fail to join altogether. Defendant Manager Clemmons also made it difficult or impossible to schedule these reviews. This blocked the work or caused deadlines to be missed to satisfy the Focus requirements. The response was "Sorry, I am too busy

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 19
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

right now" and requested the reviews be rescheduled at a time after the Focus deadlines. Upon review, Manager Gigun's schedule was wide open during these times.

**ANSWER:**  AWS denies the allegations in Paragraph 76.

**Plaintiff Reports Defendant Manager Clemmons to GM Vora**

77.    Shortly after, Plaintiff reported Defendant Manager Clemmons to GM Vora that Skip Defendant Manager Clemmons was making it impossible for him to successfully perform his Focus expectations, requesting GM Vora's guidance on what his next steps should be.

**ANSWER:**  AWS lacks sufficient information to determine whether Plaintiff met with Sachin Vora and what he may have reported to him and therefore denies the same.  AWS does not have sufficient information as to whether Plaintiff requested Sachin Vora's guidance and therefore denies the same.

78.    In response, GM Vora told Plaintiff that he was not aware of what Defendant Manager Clemmons was doing or the reasons why, but that he was aware that he had been placed in Focus.

**ANSWER:**  AWS lacks sufficient information to determine what Sachin Vora may have told Plaintiff and therefore denies the same.

79.    GM Vora further assured Plaintiff that he would "take a closer look at all that was going on" after Plaintiff returned from his upcoming vacation, and that he would pause the Focus until Plaintiff returned.

**ANSWER:**  AWS lacks sufficient information to determine what Sachin Vora may have assured Plaintiff and therefore denies the same.

80.    After three weeks, upon Plaintiff's return, GM Vora indicated that he was still looking into the details and that he would provide an update in a few days. After that conversation, GM Vora never did follow-up and stopped responding to Plaintiff's messages. Plaintiff never spoke with GM Vora again.

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 20
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**ANSWER:** AWS lacks sufficient information to determine what Sachin Vora may have "indicated" or whether he followed-up with Plaintiff and therefore denies the same. AWS lacks sufficient information to determine whether Plaintiff ever spoke with Sachin Vora again and therefore denies the same.

81.    Defendant Manager Clemmons and her direct reports continued to hinder Plaintiff's ability to successfully perform his Focus requirements prior to the deadlines by refusing to meet with Plaintiff or review or sign off on his work.

**ANSWER:** Amazon AWS the allegations in Paragraph 81.

### Defendant Manager Clemmons Continually
### Makes Discriminatory Remarks About Religion

82.    In or about March 2023, Defendant Manager Clemmons received an email during a meeting that contained her divorce papers. The papers included religious language and references common in the State of Texas. She paused the meeting to share her outrage over this. After reading the language out loud, Defendant Manager Clemmons became livid that they would have the nerve to "put religious content" in her divorce papers and derogatory remarks that religious people were "ignorant," questioning how this can still be allowed to happen today and how these people "are allowed to work in society."

**ANSWER:** AWS admits that during a break at an offsite meeting in March 2023, Defendant Clemmons received an email that contained her divorce papers. AWS admits that Defendant Clemmons noticed that the divorce papers contained the language "praying" and she remarked that she did not understand why religion was part of her divorce and attached to her court proceedings. To the extent not specifically admitted, AWS denies the remaining allegations in Paragraph 82.

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 21
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

83.     Plaintiff sat there feeling uncomfortable, humiliated and singled out yet again by Defendant Manager Clemmons.

**ANSWER:**  AWS lacks sufficient information as to how Plaintiff felt and therefore denies the same.

**Defendant Manager Clemmons Continues to Target**
**Black Team Members at Defendant Amazon Web Services**

84.     During this time, Defendant Manager Clemmons authorized Plaintiff to alter the roles and responsibilities of the Onboarding and Delivery Team Product Managers to address challenges of the hiring freeze. She continued to target the only Black Product Managers on his team, Product Manager Sannon and Senior Product Manager Franklin.

**ANSWER:**  AWS admits that it was part of Plaintiff's job to re-think the strategy and roles of his team.  To the extent not specifically admitted, AWS denies the remaining allegations in Paragraph 84.

85.     Despite the fact that Plaintiff specifically told Defendant Manager Clemmons that Product Manager Sannon was not interested in, and had little experience in, generating reports for the team and preferred to fill another role key to the team's success, Defendant Manager Clemmons disregarded Plaintiff's recommendation and insisted Product Manager Sannon be placed in a role that she knew was not a fit for Product Manager Sannon's original scope, expertise, and comfort zone, consequently heightening the possibility of underperformance and exposure to a potential PIP. There was no rational business reason to require that Product Manager Sannon continue to fill this role.

**ANSWER:**  AWS denies the allegations in paragraph 85.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

86.     In addition, after Product Manager Sannon requested to lead a "Voice of the Stakeholder" project—which she elevated through a 2 x 2 review, Defendant Manager Clemmons immediately took away Product Manager Sannon's assignment to lead the Onboarding and Delivery Team's 2 x 2 reviews, which she had successfully led for 6 months. Defendant Manager Clemmons insisted that she would now only prepare materials for Defendant Manager Clemmons to deliver— which allowed Defendant Manager Clemmons to edit or completely remove items (which she did).

**ANSWER:**  AWS admits that Ashley Sannon led the "Voice of the Stakeholder" project. AWS lacks sufficient information to determine whether Sannon requested to lead this project and therefore denies the same.  AWS denies the remaining allegations in Paragraph 86.

87.     Upon information and belief, Defendant Manager Clemmons took away Product Manager Sannon's Onboarding and Delivery Team 2x2 Review responsibility to reduce her impact and prevent her from directly elevating issues and ideas to Ship Manager Tyack and other leaders, to make it harder for her to be successful and qualify for a promotion to L6.

**ANSWER:**  AWS denies the allegations in Paragraph 87.

### Defendant Manager Clemmons Transfers
### White Team Members to Work Directly Under Her

88.     During this time, Defendant Manager Clemmons quietly transferred white, non-Mormon Product Managers, Senior Product Manager Beaubouef and Product Manager Leah Cronau ("Product Manager Cronau") from Plaintiff's team to report directly to her.

**ANSWER:**   AWS admits that April Beauboeuf and Leah Cronau, who were not performing work related to Plaintiff's area of focus, were reassigned to report to Defendant Clemmons.  AWS admits that April Beauboeuf and Leah Cronau identify as white.  To the extent not specifically admitted, AWS denies the remaining allegations in Paragraph 88.

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 23
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1
2
3
4

89.     It was not until later, when individuals noticed changes in the organization chart (PhoneTool), that Defendant Manager Clemmons acknowledged that she had moved Senior Product Manager Beaubouef and Product Manager Cronau directly under her.

5
6
7

**ANSWER:**  AWS does not have sufficient information to determine when individuals noticed changes in the organization chart, and therefore denies the same.  To the extent not specifically admitted, AWS denies the allegations in Paragraph 89.

8
9
10
11

90.     Despite the fact that Product Manager Sannon and Product Manager Cronau were the same level (L5) and Product Manager Sannon possessed more experience, Defendant Manager Clemmons never considered or offered the position to Product Manager Sannon.

12
13
14
15

**ANSWER:**  AWS admits that Ashley Sannon and Leah Cronau were level 5 managers while Plaintiff was working at AWS.  To the extent not specifically admitted, AWS denies the remaining allegations in Paragraph 90.

16
17
18
19
20

91.     Moreover, despite the fact that Senior Product Manager Franklin and Senior Product Manager Beaubouef were on the same level, L6, and Senior Product Manager Franklin's recent performance had exceeded that of everyone on the team, Defendant Manager Clemmons never considered or offered the position to Senior Product Manager Franklin.

21
22
23

**ANSWER:**  AWS admits that Carla Franklin and April Beaubouef were both level 6 managers while Plaintiff was employed at AWS.  To the extent not specifically admitted, AWS denies the remaining allegations in Paragraph 91.

24
25

**Defendant Manager Clemmons Ignores the Ideas and Input
Of Black Team Members at Defendant Amazon Web Services**

26
27

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 24
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

92.     In or about April 2023, Product Manager Sannon, at Defendant Manager Clemmons' request, sent an email with detailed suggestions for program improvements, as well as information about the responsibilities Product Manager Sannon could hold within these programs that are better aligned with her experience, skills, and interests.

**ANSWER:**  AWS denies that Defendant Clemmons requested that Ashley Sannon send the email alleged in Paragraph 92.  AWS admits that Ashley Sannon sent an email to Defendant Clemmons detailing suggestions for program improvements and about responsibilities that were better aligned with her experience.  To the extent not specifically admitted, AWS denies the remaining allegations in Paragraph 92.

93.     Upon information and belief, Defendant Manager Clemmons never even bothered to respond to Product Manager Sannon's email.

**ANSWER:**  AWS admits that Defendant Clemmons did not respond to this email.  To the extent not specifically admitted, AWS denies the remaining allegations in Paragraph 93.

94.     Instead, after receiving Product Manager Sannon's email, Defendant Manager Clemmons inexplicably insisted to Plaintiff that the ideas Product Manager Sannon sent her were "immature."

**ANSWER:**  AWS denies the allegations in Paragraph 94.

95.     Approximately one week later, Product Manager Sannon brought up the email and ideas she sent Defendant Manager Clemmons to Plaintiff during their one-on-one meeting.

**ANSWER:**  AWS lacks sufficient information to determine what Ashley Sannon brought up in a meeting with Plaintiff and therefore denies the same.

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 25
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

96.     In response, Plaintiff was awkwardly forced to tell Product Manager Sannon that, while her suggestions had merit and high value to the program, Defendant Manager Clemmons rejected her suggestion.

**ANSWER:**  AWS lacks sufficient information to determine what Plaintiff said to Ashley Sannon and therefore denies the same.

97.     Plaintiff expressed his frustration that Defendant Manager Clemmons was quick to shut down her ideas, as he recognized their value and wanted to use them as examples to increase partner value and for her promotion documents. He was stuck because Defendant Manager Clemmons had the ultimate authority whether to implement these ideas.

**ANSWER:**  AWS lacks sufficient information to determine what Plaintiff said to Ashley Sannon or whether Plaintiff was "stuck" and therefore denies the same.

98.     Shockingly, it was later revealed that most of Product Manager Sannon's ideas were used by Defendant Manager Clemmons and given to other white members of her team to implement and execute, after being rejected. It became evident that she did not want a Black team member to receive credit for ideas that were ultimately adopted.

**ANSWER:**  AWS denies the allegations in Paragraph 98.

### Plaintiff Again, Refuses to Engage in Discriminatory Employment Practices at Defendant Amazon Web Services

99.     During several one-on-one meetings, Defendant Manager Clemmons attempted to push Product Manager Sannon and Senior Product Manager Franklin down in overall rankings by questioning their performance and outcomes, and demanding that Plaintiff lower their performance ratings, limiting their chances of promotion and making them vulnerable to being placed in Focus or

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 26
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

on a PIP. Plaintiff was astounded that Defendant Manager Clemmons was repeatedly attempting to go after the only Black women on the team.

**ANSWER:**  AWS denies the allegations in Paragraph 99.

100.    In response, Plaintiff shared data and evidence that Product Manager Sannon and Senior Product Manager Franklin were some of the highest performers on the team.

**ANSWER:**  AWS admits that Plaintiff shared information about Ashley Sannon and Carla Franklin's performance.  AWS denies the remaining allegations in Paragraph 100.

101.    Defendant Manager Clemmons grew irritated by Plaintiff's objections and continued to push back and insisted that Plaintiff do as he was directed.

**ANSWER:**  AWS denies the allegations in Paragraph 101.

102.    Thereafter, Plaintiff provided Defendant Manager Clemmons with a significant amount of supporting data and examples of Product Manager Sannon and Senior Product Manager Franklin's exceptional performance, including that they were working on larger, more complex projects than non-Black Product Managers on the team—evidence Plaintiff was never asked to provide for any of the white Product Managers.

**ANSWER:**  AWS admits that Plaintiff shared information about Ashley Sannon and Carla Franklin's performance to Defendant Clemmons.  AWS denies the remaining allegations in Paragraph 102.

103.    Defendant Manager Clemmons did not agree and locked in a lower performance rating, and was angered by Plaintiff's refusal to carry out her agenda to sabotage the two Black female Product Managers on his team.

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 27
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**ANSWER:** AWS admits that Carla Franklin received a lower performance rating than her peers. AWS denies the remaining allegations in Paragraph 103.

### Plaintiff is Immediately Placed on a Performance Improvement Plan

104.    Shortly after he refused to arbitrarily push down the only Black team members in rankings, on or about May 3, 2023, Skip Defendant Manager Clemmons placed Plaintiff on a PIP and sent him the following email:

> *"Hi Steve,*
>
> *Thank you for your time today and for the discussion around expectations in your role.*
>
> *As we discussed, your performance is currently not meeting the bar for an L7 leader at Amazon, who we expect to be able to navigate ambiguity, establish strategy, and work collaboratively cross-organizationally to drive value for the business. Specifically, I'm seeing gaps in Bias for Action, Dive Deep, Deliver Results, and Earn Trust:*
>
> - ***Bias for Action****: need to adjust the speed at which you're operating. Examples: it's been nearly 2 months since strategy offsite with no plan in place yet, you've consistently waited until next 1:1s (or later) to follow-up on deliverables instead of setting interim meetings as asked to move faster. Expectation: At Amazon we operate on 2-way door decisions with ~70% information, need to start moving and iterate versus waiting for everything to be complete. You do not wait for others to provide info for you, you seek out the information you need in order to keep moving your business forward.*
>
> - ***Dive Deep****: appears to me as though you're orchestrating across your team but not rolling up your sleeves and diving deep, where appropriate. Examples: understanding of CRM integration activities, knowledge of team support (eg, BI role), nuances in Named PM engagement with partners for comms plan. Expectation: L7 managers at Amazon both "do" and "lead", as needed. I expect you to own the SME strategy for the team (with their input), versus delegating that all down to them.*
>
> - ***Deliver Results****: this is a function of the two above – because you're not moving quickly and diving deep enough, you haven't yet delivered on important work. Example: No doc written for SME strategy. Expectations: You move quickly to gather information/input, write a doc, revise and gain alignment through the doc, and execute on it to drive value for the business.*
>
> - ***Earn Trust****: I do not see a collaborative approach to working with colleagues, this engagement has eroded trust with me and your peers. Examples: screenshot*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*of LT convo posted in the all-team channel, calling out an IC in email without talking to their manager or having all the details, non-collaborative language/stances like "making" your peer work with you. Expectations: we are one Amazon and one ISVA team. We work collaboratively together to address problems, seek to gain understanding from each other, and work to find the middle ground and win-win solutions for our team, partners, and customers.*

*My expectations of work that needs to be completed within the next month are:*

*By May 12: Clear communication about role change, effectively executed, to impacted stakeholders. Must address nuances of role coverage.*

*By May 19: A narrative doc on the SME strategy, including role scope and outcomes that has been reviewed by the SME team and CSA leadership, at minimum, with additional review by key ISVA stakeholders done or scheduled.*

*By June 2: Complete at least one ID&E and one Writing training. Over next month: Demonstrate cross-team collaboration and rebuild trust across CSA and ISVA leadership through thoughtful interaction in meetings and with team members. Recognize different work styles and personalities will not always align to your own and adapt accordingly.*

*I appreciate your interest in improving your performance in this role. While I'm willing to provide coaching and support to help you with this, it is important for you to understand that the responsibility for bringing your performance up to an acceptable level rests with you. We will review your progress on a weekly basis during our 1:1s.*

*Please let me know if you have any questions or need clarification on any of the above.*

*Thanks!*

*Rae [Skip Defendant Manager Clemmons]"*

**ANSWER:**  AWS admits that Defendant Clemmons sent an email along the lines of what is cited in Paragraph 104.  Except as specifically admitted, AWS denies the remaining allegations in Paragraph 104.

### Product Manager Sannon Confides that Defendant Manager Clemmons is Treating Her Less Favorably in Comparison to Similarly Situated White Product Managers

105.    Shortly after, during a one-on-one meeting, Product Manager Sannon reported to Plaintiff that there was "something weird going on" because Defendant Manager Clemmons was

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 29
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

consistently micromanaging her, taking away her responsibilities and seemed to be targeting her and Senior Product Manager Franklin.

**ANSWER:**  AWS lacks sufficient information as to what Ashley Sannon reported to Plaintiff and therefore denies the same.  AWS denies the remaining allegations in Paragraph 105.

106.    Product Manager Sannon asked Plaintiff, "Am I an idiot or something? Do I require this level of micromanaging?"

**ANSWER:**  AWS lacks sufficient information as to what Ashley Sannon may have asked Plaintiff and therefore denies the same.

107.    Plaintiff assured Product Manager Sannon that she was one of the highest contributors on the team and did not require micromanaging, and expressed his belief that Defendant Manager Clemmons was intentionally targeting and singling out Product Manager Sannon and Senior Product Manager Franklin.

**ANSWER:**  AWS lacks sufficient information as to what Plaintiff stated to Ashley Sannon and therefore denies the same.  AWS denies the remaining allegations in Paragraph 107.

108.    Plaintiff acknowledged the disparity in treatment among Black and white team members and reported that he was forced to provide Defendant Manager Clemmons with more robust evidence of performance for Product Manager Sannon and Senior Product Manager Franklin in comparison to white Product Managers.

**ANSWER:**  AWS lacks sufficient information as to what Plaintiff stated to Ashley Sannon and therefore denies the same.  AWS denies the remaining allegations in Paragraph 108.

### Plaintiff Confides that Defendant Manager Clemmons is Subjecting Him to Religious Discrimination and Retaliation

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 30
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1
2
3
4
5
6

109.    Thereafter, Plaintiff confided to Product Manager Sannon, that he too felt he was being targeted by Defendant Manager Clemmons as he was placed in Focus in retaliation for refusing to unjustly terminate a Black member of the team and was placed on a PIP after he continually pushed back and provided data and evidence contrary to Defendant Manager Clemmons' discriminatory demands.

7
8

**ANSWER:** AWS lacks sufficient information as to what Plaintiff stated to Ashley Sannon and therefore denies the same.  AWS denies the remaining allegations in Paragraph 109.

9
10
11
12
13

110.    Plaintiff advised Product Manager Sannon to search for new opportunities either internally or externally, and to be very careful in all her actions and communications, as she was obviously being targeted due to her race. Plaintiff feared that that Defendant Manager Clemmons might escalate her efforts to force out Black employees.

14
15
16
17

**ANSWER:** AWS lacks sufficient information as to what Plaintiff stated to Ashley Sannon or what he feared and therefore denies the same.  AWS denies the remaining allegations in Paragraph 110.

18
19
20
21
22
23

111.    Thereafter, when Product Manager Sannon brought up the upcoming team offsite in Dallas, Texas, Plaintiff awkwardly let Manager Sannon know that he would not be attending because he did not feel comfortable going on a trip with Defendant Manager Clemmons and wished to keep their interactions at a minimum due to the incessant harassment that he was subjected to during team meetings.

24
25
26
27

**ANSWER:** AWS lacks sufficient information as to what Plaintiff stated to Ashley Sannon or what he feared and therefore denies the same.

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 31
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    112.    Product Manager Sannon acknowledged and agreed that Defendant Manager

2  Clemmons' targeted harassment of Plaintiff during meetings was extremely inappropriate and

3  made herself and other team members feel "uncomfortable."

4

5    **ANSWER:** AWS lacks sufficient information as to what Ashley Sannon stated to Plaintiff

6  and therefore denies the same.

7              **Plaintiff Reports That he is Being**
8      **Forced out of his Position at Defendant Amazon Web Services**

9    113.    During this time, Plaintiff confided to Skip Manager Tyack that he believed he was

10  being unjustly forced out of his position at Defendant Amazon Web Services.

11

12    **ANSWER:** AWS lacks sufficient information as to what Plaintiff confided to Emily Tyack

13  and therefore denies the same.

14    114.    Though Skip Manager Tyack agreed to meet with Defendant Manager Clemmons

15  to further investigate and follow-up with Plaintiff on his complaint, she never followed up with

16  Plaintiff or inquired further.

17

18    **ANSWER:** AWS lacks sufficient information as to what Plaintiff confided to Emily Tyack

19  or her purported response and therefore denies the same.

20    115.    Thereafter, Skip Manager Tyack stopped responding to Plaintiff's communications,

21  ignored his meeting requests, and never following up.

22

23    **ANSWER:** AWS lacks sufficient information as to communications between Plaintiff and

24  Emily Tyack and therefore denies the same.

25        **Defendant Manager Clemmons Continually Subjects Plaintiff**
26      **to a Discriminatory and Retaliatory Hostile Work Environment**

27

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 32
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

116.    On or about June 16, 2023, Defendant Manager Clemmons sent Plaintiff an email letting him know that she knew that he told Skip Manager Tyack (Defendant Manager Clemmons' manager) that he was "about to be fired," and further wrote, "This is not professional and I would ask you to refrain from making this type of comment (or any other inappropriate comment) to other members of our team. Your current status is a private matter that we will not be sharing with the team, and ask that you do the same."

**ANSWER:**  AWS admits that Defendant Clemmons sent an email to Plaintiff on or about June 16, 2023 which included the text cited in Paragraph 116.  To the extent not specifically admitted, AWS denies the remaining allegations in Paragraph 116.

117.    In this same email, Defendant Manager Clemmons falsely accused Plaintiff of "filtering down information inappropriately," citing that "there have been several occasions where you have shared leadership content or forwarded leadership emails, rather than filtering down the information and owning it as a member of the leadership team. We need to present a united front as leaders on the team and take Ownership of leadership decisions and directions, even if you disagree with the direction (that's where Disagree & Commit comes in!)." Plaintiff was disgusted that Defendant Manager Clemmons was using Defendant Corporate lingo to suggest that he was violating Defendant rules by objecting to the discriminatory actions.

**ANSWER:**  AWS admits that Defendant Clemmons sent an email to Plaintiff on or about June 16, 2023 which included the language cited in Paragraph 117.  AWS lacks sufficient information to determine how Plaintiff felt after receiving this email.  To the extent not specifically admitted, AWS denies the remaining allegations in Paragraph 117.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

118.    At the end of her email, Defendant Manager Clemmons went on to threaten Plaintiff, stating, "If I witness or hear about behavior not aligned with these expectations, I will work with HR on an appropriate course of action."

**ANSWER:**  AWS admits that Defendant Clemmons sent an email to Plaintiff on or about June 16, 2023 which included the language cited in Paragraph 118.  AWS denies the remaining allegations in Paragraph 118.

119.    On or about June 19, 2023, Plaintiff sent the following response to Skip Defendant Manager Clemmons:

"*Rae [Skip Defendant Manager Clemmons],*

*I'm extremely concerned about this email, and that you are calling my professionalism and integrity into question without any facts or data to support the claim. You're greatly exaggerating what has happened and implying that you need to "prepare me" to be professional and not discuss inappropriate information with individuals at the offsite. Where is the concern coming from?*

*Every point you make below can be invalidated through a quick conversation with the involved individuals. To me, this is another example of you using unwarranted criticism, or the stick, and creating discomfort and hostility when it's absolutely unnecessary.*"

**ANSWER:**  AWS admits that on or about June 19, 2023, Plaintiff responded to Defendant Clemmons' email and included the text cited in Paragraph 119.

### Plaintiff Formally Reports Manager
### Clemmons to Defendant Amazon Web Services HR

120.    Thereafter, On or about June 19, 2023, Plaintiff forwarded Skip Defendant Manager Clemmons' aggressive email to HR Lavelle, HR Amanda Desouza, and HR Hannah Giardina, and formally reported Defendant Manager Clemmons:

*"Hi everyone. I am having some real difficulties with my manager. Our discussions are not based in reality I need your help. Below is my response to the latest unfounded "concern" Rae has, going into our team offsite this week.*

*I don't expect your help with this specific issue. I wanted to share it an example of just how far off the rails we are. I will need your help finding a path forward. Some mentors and*

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 34
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*colleagues tell me this happens at Amazon, that she is likely pushing hard to provoke me to walk away vs all the work required to fight me or terminate my employment.*

*I would love some suggestions and options, and hope you can help. I also want you to be aware of the unfounded communications and environment that's being created for employees working under Rae. I don't know who has come forward to you, but I am aware of several individuals struggling in similar ways.*

*We can't allow this type of work environment to continue, if there is any validity in the LP to be the earth's best employer. Please consider this a formal complaint and let me know if there's any additional process I need to follow."*

**ANSWER:**  AWS admits that Plaintiff sent the email cited in Paragraph 120 on or about June 19, 2023.  AWS denies the remaining allegations in Paragraph 120.

121.    On or about June 20, 2023, HR Lavelle sent the following email response:

*"Hi Steve [Plaintiff],*
*Thank you for sharing your concerns and perspective with us. Amazon takes concerns of this nature very seriously as Amazon is committed to providing a workplace that is safe and comfortable for all.*
*A member of our Builder Relations team will be reaching out to you this week to discuss your concerns further. Our Builder Relations team is a specialized segment within PXT that focuses on ensuring the best possible builder experience and resolving challenges that negatively impact builders.*
*Please let me know if you need anything in the meantime or if you have any questions at all."*

**ANSWER:**  AWS admits that Sara Lavelle sent the email cited in paragraph 121 on or about June 20, 2023.

**Plaintiff Reports the Severe and Pervasive Hostile Work
Environment, Discrimination, and Retaliation to Defendant Amazon Web Services
HR**

122.    On or about June 23, 2023, Plaintiff sent the following email response, reporting Defendant Manager Clemmons' targeted harassment, retaliation, and the increasingly hostile work environment he was subjected to at the hands of Defendant Manager Clemmons:

*"Thank you Sara [HR Lavelle]. I appreciate any help and assistance available to me. Please know that when I left Microsoft seven months ago to join the ISVA team, I thought that I*

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 35
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*would be joining a team of professionals interested in improving the program, treating each other ethically, and adding value to AWS. I expected that my 25+ year career in technology and strategy would be valued, especially since I have deep partner experience and have successfully launched and run global cloud partner programs exceeding ISVA in size and scope. I understand better than most how partners operate and how to motivate them.*

*I'm disappointed with the hostility and intimidation from Rae. This email is a good reflection of our working relationship. It's consistent with the intimidation and hostile work environment that I've experienced since pushing back on the biased and uninformed decision to put Carla Franklin on Focus. When I dug deep, it was the wrong thing to do, but Rae overrode me and moved Carla to Focus in the tool directly. You agreed with me, and we initiated a call together with Rae, but she was forceful and initiated the Focus process.*

*My professionalism has been met with retaliation, hostility, bias, lies, gossip and defamation, unfair and illegal removal of work scope and individuals from my team, and now more of the direct intimidation you can see in Rae's email message. Rae has spread lies and rumors about me with my leadership and my peers on the team, some of whom have not pushed back in an effort to further their own careers. This undermines my efforts and in-flight work, and poisons my chances for future success. Rae's actions have impacted my health and well-being, and I no longer think I can work under her or on the ISVA team. I would like a meeting with someone in HR, L6 or higher to discuss the hostile work environment that Rae Clemmons has created for myself and other members of my team. I am seeking to be moved off the ISVA team due to ongoing hostility in the work environment, defamation, intimidation and harassment.*

*I'm taken back by my experience working at AWS under Rae. I felt humiliated when I learned my peers where aware of my Focus status. This should have been kept in confidence and was done in an effort to alienate me from my peers.*

*Can you help with my requests, a meeting to share and discuss options?"*

**ANSWER:**  AWS admits that Plaintiff sent the email cited in Paragraph 122 on or about June 23, 2023.  AWS denies the remaining allegations in Paragraph 122.

### Product Manager Sannon Objects to Defendant Manager
### Clemmons' Harassment of Plaintiff During Meetings

123.    Upon information and belief, on or about June 21, 2023, at the team offsite, Product Manager Sannon objected and privately expressed her concerns directly to Defendant Manager Clemmons regarding her retaliatory and discriminatory treatment of Plaintiff during meetings, stating that her remarks singling him out during meetings were "inappropriate," and made herself and fellow teammates feel uncomfortable.

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 36
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

**ANSWER:**  AWS denies the allegations in Paragraph 123.

2

**Senior Product Manager Franklin Reports Defendant Manager Clemmons to**
**Defendant Amazon Web Services HR for Race Discrimination**

3

4

124.    Upon information and belief, in or about July 2023, after the Dallas offsite, Senior

5

Product Manager Franklin reported *Defendant* Manager Clemmons to Defendant Amazon Web

6

Services Human Resources for race discrimination.

7

**ANSWER:**  AWS admits that Carla Franklin submitted a complaint against Defendant

8

Clemmons, which Amazon investigated and found was unsubstantiated.

9

**Plaintiff Meets with Employee Relations Frisbie**
**and Reports the Discriminatory and Retaliatory Hostile Work Environment**

10

11

125.    Thereafter, on or about June 27, 2023, Defendant Amazon Web Services Employee

12

Relations Manager, Kat Frisbie ("Employee Relations Manager Frisbie"), requested to meet with

13

Plaintiff to investigate Senior Product Manager Franklin's complaints of race discrimination.

14

**ANSWER:**  AWS admits that Kat Frisbie conducted an investigation into Carla Franklin's

15

allegations and interviewed Plaintiff as part of this investigation.

16

17

126.    At the beginning of the meeting, Employee Relations Manager Frisbie informed

18

Plaintiff that he was "not to talk with anyone but her about this [discrimination]."

19

**ANSWER:**  AWS admits that, at the beginning of the interview, as with all investigatory

20

interviews, Kat Frisbie asked Plaintiff to treat the active investigation involving his subordinate as

21

confidential.  AWS denies the remaining allegations in Paragraph 126.

22

23

127.    When asked about Defendant Manager Clemmons and the team dynamic, Plaintiff

24

reported several examples of the discriminatory treatment of Black team members at Defendant

25

Amazon Web Services, including the pushback from Defendant Manager Clemmons and GM Vora to

26

remove Senior Product Manager Franklin from Focus after she clearly exceeded expectations, as well

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

as the micromanagement and unfair work assignments, and unreasonable targeting of Black team members—Senior Product Manager Franklin and Product Manager Sannon.

**ANSWER:**  AWS admits that Plaintiff alleged several instances of what he believed was unfair conduct against different individuals by Defendant Clemmons.  AWS denies the remaining allegations in Paragraph 127.

128.    Thereafter, Plaintiff reported that Defendant Manager Clemmons seemed to be targeting him due to his religion and reported that Defendant Manager Clemmons' disdain towards him began immediately after she learned of his religious affiliation.

**ANSWER:**  AWS admits that Plaintiff reported his belief that Defendant Clemmons was targeting him due to his religion.  To the extent not specifically admitted, AWS denies the remaining allegations in Paragraph 128.

129.    Plaintiff reported that Defendant Manager Clemmons often singled him out and belittled him during meetings, made discriminatory remarks during meetings regarding religion and religious people, assigned him limited and less favorable work than other team managers, and was held to a different, higher standard than non-Mormon Managers at Defendant Amazon Web Services.

**ANSWER:**  AWS admits that Plaintiff reported his belief that Defendant Clemmons was targeting him due to his religion.  To the extent not specifically admitted, AWS denies the remaining allegations in Paragraph 129.

130.    Upon information and belief, Plaintiff's complaints of discrimination and retaliation directed towards him required Defendant to commence an additional investigation into his allegations.

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 38
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**ANSWER:** AWS admits that it investigated Plaintiff's complaints about Defendant Clemmons and found those unsubstantiated. To the extent not specifically admitted, AWS denies the remaining allegations in Paragraph 130.

131. Throughout the entirety of the meeting, Employee Relations Manager Frisbie was unwilling to share a timeline, dates, or even commit to following up with Plaintiff about her investigation, and stated that it wasn't "her place." When Plaintiff asked who he could follow-up with about the investigation, she curtly let him know that she would "let him know" at a later date.

**ANSWER:** AWS admits that Kat Frisbie did not provide a specific timeline for the completion of the investigation. AWS denies the remaining allegations in Paragraph 131.

**Plaintiff Forwards Examples of Discrimination,**
**Retaliation, and Harassment to Defendant Amazon Web Services**

132. After the meeting, on or about June 28, 2023, Plaintiff forwarded the email that Product Manager Sannon sent Defendant Manager Clemmons with her ideas to Employee Relations Manager Frisbie and wrote, "This is the email that Ashley Sannon [Product Manager Sannon] sen[t] to Rae [Defendant Manager Clemmons] with ideas and suggestions. According to Ashley, Rae never responded verbally or in writing," and went on to report that "many of these ideas were given to members of her team to kick off and execute, long after this email was sent."

**ANSWER:** AWS admits that Plaintiff sent the email described in Paragraph 132 on or about June 28, 2023.

133. Plaintiff forwarded several other emails to Employee Relations Manager Frisbie, reporting and providing examples of discrimination and retaliation, including messages in which Defendant Manager Clemmons expressed outrage that Plaintiff authorized the purchase of business cards, and an email in which Defendant Manager Clemmons told Senior Product Manager Franklin NOT to attend an after-hours partner event, even with no travel costs, and reported "the

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 39
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

thread is illustrative; holding Carla [Senior Product Manager Franklin] back, and used to indicate that I am not using high-judgement to drive the right outcomes."

**ANSWER:**  AWS admits that Plaintiff forwarded emails to Kat Frisbie attempting to demonstrate the allegations he made against Defendant Clemmons.  AWS denies the remaining allegations in Paragraph 133.

## Product Manager Sannon Also Reports Race
## Discrimination to Defendant Amazon Web Services HR

134.    Upon information and belief, on or about July 12, 2023, Defendant Amazon Web Services asked to meet with Product Manager Sannon.

**ANSWER:**  AWS admits that Kat Frisbie met with Ashley Sannon on July 13, 2023 to discuss concerns raised by AWS employees.

135.    Upon information and belief, during her meeting with HR, Product Manager Sannon reported that she felt she was being targeted by Defendant Manager Clemmons and was subjected to incessant micromanagement and criticism due to her race, and explicitly reported that Defendant Manager Clemmons seemed to be targeting the only two Black female team members––given she never treated similarly situated white team members this way.

**ANSWER:**  AWS admits that Ashley Sannon provided information to HR regarding what she perceived to be Defendant Clemmons' treatment of her and others and her belief as to the reason for it.  AWS denies the remaining allegations in Paragraph 135.

136.    Upon information and belief, following the meeting, on or about July 13, 2023, Product Manager Sannon sent an email to Employee Relations Manager Frisbie, reporting that Defendant Manager Clemmons was holding her to a higher standard than a white, male Product Manager who was leveled above her.

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 40
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    **ANSWER:** AWS admits that Ashley Sannon sent emails and documents to Kat Frisbie

2    after their conversation. AWS denies the remaining allegations in Paragraph 136.

3    137. Upon information and belief, Product Manager Sannon's complaints of

4    discrimination and retaliation directed towards her forced Defendant to commence an additional

5    investigation into these allegations.

6    **ANSWER:** AWS admits that it investigated the claims made by Ashley Sannon which it

7    found were unsubstantiated. AWS denies the remaining allegations in Paragraph 137.

8

9    ### Defendant Amazon Web Services Human Resources
     ### Coaches Defendant Manager Clemmons to Starts Inclusion Diversity
     ### and Equity Slack Channel to Shield her from Discrimination Complaints

10

11   138. Shortly after Plaintiff's reports to Defendant Amazon Web Service's HR, on or

12   about July 28, 2023, Defendant Manager Clemmons created an Inclusion, Diversity, and Equity

13   Slack channel for the team—which never existed prior to Plaintiff's complaints of discrimination

14   and retaliation, and sent the following message in the chat:

15

16       *"Happy Friday, team!*
         *A few of you have surfaced a desire to have an intentional space to talk about ID&E -- to share*
17       *recent insights, learn from each other, and sometimes just vent about what we're seeing and*
         *reading in the news. I'm pleased to announce that we've created a new Slack channel A csa-*
18       *ide specifically for this purpose! To help make it a safe space I've made the channel private*
         *and will add the whole team to it shortly.*
19       *You DO NOT have to participate and are welcome to remove yourself if you would rather*
         *not be a part of the conversations.*
20       *For those who choose to remain, we ask that you 1/ stay curious and open to new*
         *perspectives, 2/ assume good intent, and 3/ be honest and respectful. We all come from*
21       *different backgrounds and life experiences that inform our perspectives, are all in different*
         *stages of our ID&E journey, and all have places where we can learn and grow -- those*
22       *places may just be different than others and that's okay!"*

23

24   **ANSWER:** AWS admits that Defendant Clemmons created an Inclusion, Diversity, and

25   Equity Slack channel and sent a message along the lines of what is cited in Paragraph 138. AWS

26   denies the remaining allegations in Paragraph 138.

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

139.    Immediately, Plaintiff suspected Defendant Manager Clemmons had been told by Defendant Amazon Web Services Human Resources to create the channel in an effort to cover up discrimination and protect managers who engaged in unlawful discrimination and retaliation.

**ANSWER:** AWS lacks sufficient information to determine what Plaintiff "suspected" and therefore denies the same.

140.    On or about August 4, 2023, Defendant Manager Clemmons sent the following message in the Team Slack Channel:

> *"Good morning and happy Friday, y'all! Hope you have a productive meeting-free Friday and fantastic weekend.*
> *I was reading the Better Allies "5 Ally Actions" this morning (her Friday newsletter) and found this gem – reframe "great minds think alike" to "great minds don't think alike" to combat groupthink. If you find yourself in a meeting where everyone is saying the same thing/ agreeing on everything, you may wish to consider if you have a broad and diverse enough perspective represented. "Great minds don't think alike" is also very Amazonian-- we don't believe we are always right, work hard to disconfirm our beliefs, and are encouraged to (respectfully) challenge decisions when we disagree.*
> *For more inclusion practices, don't forget about our new @csa-ide channel. I'd love to continue the discussion over there! :-)"*

**ANSWER:** AWS admits that Defendant Clemmons sent a Slack message along the lines of what is cited in Paragraph 140.

**Defendant Amazon Web Services Human Resources Refuses to Take Meaningful Action In Response to Multiple Complaints of Discrimination and Retaliation**

141.    On or about August 9, 2023, Plaintiff was asked to meet with Employee Relations Manager Frisbie.

**ANSWER:** AWS lacks sufficient information to determine whether Plaintiff was asked to meet with Kat Frisbie on August 9, 2023 and therefore denies the same.

142.    During the meeting, Employee Relations Manager Frisbie let Plaintiff know that she completed the investigation initiated at Sr. Product Manager Franklin's request and falsely

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 42
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

assured him that she found "no evidence of discrimination"—despite the fact that Plaintiff, Product Manager Sannon, and Senior Product Manager Franklin all reported Defendant Manager Clemmons for engaging in unlawful discrimination and retaliation, and forwarded on email messages and other communications to the contrary.

**ANSWER:**  AWS admits that the investigation into Carla Franklin's complaints resulted in a finding that the allegations were unsubstantiated.  AWS lacks sufficient information to determine what Kat Frisbie may have stated to Plaintiff regarding this investigation on August 9, 2023 and therefore denies the same.  AWS denies the remaining allegations in Paragraph 142.

143.    Thereafter, Employee Relations Frisbie informed Plaintiff that she found no evidence of any type of religious discrimination occurring at Defendant Amazon Web Services and cited to the fact that "healthy" conversations regarding Ramadan took place—justification that that Defendant Manager Clemmons had no issue with religion or religious people, like Plaintiff, despite her many comments that she did have an issue with religion, religious people and Plaintiff himself due to his religion and her behavior towards him.

**ANSWER:**   AWS admits that its investigation into complaints against Defendant Clemmons resulted in finding those allegations unsubstantiated.  AWS denies the remaining allegations in Paragraph 143.

144.    Upon information and belief, Employee Relations Manager Frisbie also falsely assured Product Manager Sannon and Senior Product Manager Franklin that Defendant Amazon Web Services found no evidence of discrimination.

**ANSWER:**   AWS admits that its investigation into complaints against Defendant Clemmons resulted in finding those allegations unsubstantiated.  AWS denies the remaining allegations in Paragraph 144.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**The Retaliation Escalates After Plaintiff Reports**
**Defendant Manager Clemmons to HR and Plaintiff is Set Up to Fail**

145.     Thereafter, Plaintiff received several additional requirements to meet the performance expectations of his PIP, including:

- Write and execute a successful promotion document for Product Manager Sannon, who moved from being a poor performer prior to her reports of discrimination to HR, to suddenly needing a promotion after Defendant HR's investigation;

- Write an SME Strategy Document that reflects current and past thinking, and new information. 1.5 pages with directional changes for CSA organization, SME tying this into the vision. Before the due date, schedule a review with LT, to incorporate their feedback and changes. Get alignment on doc and changes, and finalize by August 29, 2023.

- Create an Operational Plan for SME team (OP1/OP2 format) aligned to strategy. Live doc review with Defendant Manager Clemmons and Skip Manager Tyack, due September 6, 2023.

- Successfully promote Product Manager Sannon from L5 to L6, and produce an analysis to understand promo pathway and timeline. Incorporate feedback, get alignment from Defendant Manager Clemmons before coaching Product Manager Sannon against L6 bar and the action plan and how to fill in gaps, etc. Share Document and share status with Defendant Manager Clemmons weekly. Final results due September 13, 2023.

- Provide useful and actionable feedback to peers and actively improve discussions and provide written updates by 5:00 pm central time the day before our 1:1s with Defendant Manager Clemmons.

**ANSWER:**  AWS admits that in the Pivot program, Plaintiff was asked to complete, among other things, the following goals:

- Create a promotion plan for Ashey Sannon;

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 44
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

- Complete a SME Strategy document including rationale for the roles, scope of work, and outcomes/goals the team will own and drive;
- Develop an H2'23 operational plan for the SME team; and

  Improve communication, collaboration, and transparency with peer CSA leaders, your manager, and ISVA leaders.

To the extent not specifically admitted, AWS denies the remaining allegations in Paragraph 145.

146.    Plaintiff was told that if he did not successfully complete each of these new expectations, he would be promptly terminated from his position at Defendant Amazon Web Services.

**ANSWER:**  AWS admits that individuals who do not successfully complete the Pivot program are given the option to appeal the decision or leave AWS.  To the extent not specifically admitted, AWS denies the remaining allegations in Paragraph 146.

147.    Upon receiving these requirements, Plaintiff felt disheartened, as he knew that his efforts to complete these expectations would be blocked yet again, with a high level of re-work required, and a timeline that was neither realistic nor achievable.

**ANSWER:**  AWS lacks sufficient information to determine how Plaintiff felt upon being entered into Pivot and therefore denies the same.  AWS denies the remaining allegations in Paragraph 147.

### Defendant Manager Clemmons and Manager Airlee Sabotage
### Plaintiff's Ability to Fulfill his Responsibilities Prior to the Deadlines

148.    In addition to the unrealistic requirements, for the next month, each time Defendant Manager Clemmons was required to meet with Plaintiff or sign-off on his work so that he could fulfill his requirements prior to the specified due date, Defendant Manager Clemmons and the peers under

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 45
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

her direction pushed meetings back to a later date, rejected Plaintiff's meeting requests, and made it impossible for Plaintiff to execute the required actions within the timeline specified.

**ANSWER:** AWS denies the allegations in Paragraph 148.

**Plaintiff Is Terminated from Defendant Amazon Web Services Due to
His Religion and in Retaliation for His Lawful Complaints of Discrimination**

149.    On or about the morning of September 8, 2023, Defendant Manager Clemmons and HR Lavelle joined a call with Plaintiff and ask about the status of the PIP requirement actions.

**ANSWER:** Admitted.

150.    When Plaintiff reported that the status of the requirements were impossible to complete within the timeline provided—especially given Defendant Manager Clemmons' directs refusal to take meetings or sign-off on his work, Defendant Manager Clemmons immediately cut Plaintiff off and stated that she would proceed to terminate employment, effective immediately, due to insubordination.

**ANSWER:** AWS admits that Plaintiff claimed the requirements were not doable.  AWS admits that Plaintiff was fired for insubordination.  AWS denies the allegations in Paragraph 150.

151.    Defendant Manager Clemmons indicated that HR Lavelle would handle all future communication and administrative tasks and promptly ended the call.

**ANSWER:** AWS admits that Defendant Clemmons informed Plaintiff that Sara Lavelle would handle future communications.  AWS denies the remaining allegations in Paragraph 151.

**FIRST CAUSE OF ACTION
(DISCRIMINATION AND A HOSTILE WORK ENVIRONMENT
IN VIOLATION OF TITLE VII)**
*Against Defendant Amazon Web Services, Inc.*

152.    Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**ANSWER:**  Paragraph 152 is a statement of the case that does not require a response.  To the extent a response is required, AWS denies the allegations in Paragraph 152.

153.    Plaintiff identifies as Mormon as is a member of a protected class because of his religion.

**ANSWER:**  AWS lacks sufficient information to determine how Plaintiff identifies and therefore denies the same.  The remaining allegations in Paragraph 153 are a statement of law to which no response is required.  To the extent a response is required, AWS admits that religion is a protected class.

154.    Defendant Amazon Web Services, Inc. discriminated against Plaintiff in violation of Title VII by subjecting him to different treatment and a hostile work environment on the basis of his religion.

**ANSWER:**  AWS denies the allegations in Paragraph 154.

155.    Plaintiff has suffered disparate treatment and a hostile work environment as a result of Defendant Amazon Web Services Inc.'s wrongful conduct.

**ANSWER:**  AWS denies the allegations in Paragraph 155.

156.    Defendant Amazon Web Services, Inc. has discriminated against Plaintiff by treating him differently from and less preferably than similarly-situated non-Mormon employees and by subjecting him to disparate terms and conditions of employment and other forms of discrimination on the basis of his religion in violation of Title VII, including but not limited to severe and pervasive harassment on the basis of his religion.

**ANSWER:**  AWS denies the allegations in Paragraph 156.

157.    The conditions of the hostile work environment that Plaintiff was subjected to were so severe or pervasive as to substantially alter the terms and conditions of Plaintiff's employment.

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 47
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

**ANSWER:** AWS denies the allegations in Paragraph 157.

2

158.    The conduct of Defendant Amazon Web Services, Inc. was intentional, deliberate,

3

4

willful, malicious, reckless, and conducted in callous disregard of the rights of Plaintiff, entitling

5

Plaintiff to punitive damages.

6

**ANSWER:** AWS denies the allegations in Paragraph 158.

7

159.    By reason of Defendant Amazon Web Services, Inc.'s discrimination, Plaintiff is

8

entitled to all remedies available for violations of Title VII.

9

**ANSWER:** AWS denies the allegations in Paragraph 159.

10

### SECOND CAUSE OF ACTION
### (RETALIATION IN VIOLATION OF TITLE VII)
### *Against Defendant Amazon Web Services, Inc.*

11

12

160.    Plaintiff re-alleges and incorporates by reference each and every allegation in each

13

14

and every aforementioned paragraph as if fully set forth herein.

15

**ANSWER:** Paragraph 160 is a statement of the case that does not require a response.  To

16

the extent a response is required, AWS denies the allegations in Paragraph 160.

17

161.    Plaintiff was an employee of Defendant Amazon Web Services, Inc. and is

18

protected by Title VII from retaliation.

19

**ANSWER:** Admitted.

20

162.    Plaintiff complained to Defendant Amazon Web Services, Inc. about the religious

21

22

discrimination and hostile work environment he was subjected to during his employment with

23

Defendant Amazon Web Services, Inc.

24

**ANSWER:**  AWS admits that Plaintiff brought up complaints related to religious

25

discrimination while employed at AWS.  AWS denies the remaining allegations in Paragraph 162.

26

27

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 48
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

163.    Plaintiff also complained to Defendant Amazon Web Services, Inc. that his Black coworkers were being targeted by members of Defendant Amazon Web Services, Inc.'s leadership because of their race.

**ANSWER:** Admitted.

164.    Plaintiff's complaints were ignored and discouraged by Defendant Amazon Web Services, Inc.

**ANSWER:** AWS denies the allegations in Paragraph 164.

165.    Plaintiff's protests and complaints to Defendant Amazon Web Services, Inc. about the religious discrimination and hostile work environment he was subjected to during his employment with Defendant Amazon Web Services, Inc. and complaints about ongoing race discrimination against Black employees were protected activities under Title VII.

**ANSWER:** Paragraph 165 is a statement of law to which no response is required.  To the extent a response is required, AWS denies the allegations in Paragraph 165.

166.    Defendant Amazon Web Services, Inc. unlawfully and without cause, retaliated against Plaintiff as a direct result of Plaintiff complaining about the incidents of religious and race discrimination.

**ANSWER:** AWS denies the allegations in Paragraph 166.

167.    Because he protested Defendant Amazon Web Services, Inc.'s unlawful behavior, Plaintiff was subjected to retaliation.

**ANSWER:** AWS denies the allegations in Paragraph 167.

168.    The retaliation substantially interfered with the employment of Plaintiff and created an intimidating, offensive, and hostile work environment in violation of Title VII.

**ANSWER:** AWS denies the allegations in Paragraph 168.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    169.    Plaintiff reported and objected to Defendant Amazon Web Services, Inc.'s

2    retaliation; thus, Defendant knew about the retaliation and the effect it had on Plaintiff's

3    employment and failed to take any action to stop the retaliatory conduct.

4    **ANSWER:**  AWS denies the allegations in Paragraph 169.

5    170.    The conduct of Defendant Amazon Web Services, Inc. was intentional, deliberate,

6    willful, malicious, reckless and conducted in callous disregard of the rights of Plaintiff, entitling

7    Plaintiff to punitive damages.

8    **ANSWER:**  AWS denies the allegations in Paragraph 170.

9    171.    By reason of Defendant Amazon Web Services, Inc.'s retaliation, Plaintiff is

10    entitled to all remedies available for violations of Title VII.

11    **ANSWER:**  AWS denies the allegations in Paragraph 171.

### THIRD CAUSE OF ACTION
### RETALIATION IN VIOLATION OF SECTION 1981
### *Against All Defendants*

172.    Plaintiff re-alleges and incorporates by reference each and every allegation in each

and every aforementioned paragraph as if fully set forth herein.

**ANSWER:**  Paragraph 172 is a statement of the case that does not require a response.  To

the extent a response is required, AWS denies the allegations in Paragraph 172.

173.    Plaintiff was an employee of Defendants and is protected by 42 U.S.C. § 1981 from

retaliation.

**ANSWER:**  Paragraph 173 is a statement of law to which no response is required.  To the

extent a response is required, AWS admits that Plaintiff was an employee of AWS and is protected

from retaliation.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

174.    Plaintiff opposed and complained to Defendants about the race discrimination Black employees were subjected to during his employment.

**ANSWER:**    AWS admits that Plaintiff brought up complaints related to race discrimination while employed at AWS.  AWS denies the remaining allegations in Paragraph 174.

175.    Plaintiff's complaints were ignored and discouraged by Defendants.

**ANSWER:**  AWS denies the allegations in Paragraph 175.

176.    Plaintiff notified Defendants of the race discrimination and harassment Black employees were subjected to and protested the harassment.

**ANSWER:**    AWS admits that Plaintiff brought up complaints related to race discrimination while employed at AWS.  AWS denies the remaining allegations in Paragraph 176.

177.    Plaintiff's protest to Defendants about the race discrimination and harassment Black employees were subjected to during his employment with Defendant was a protected activity under 42 U.S.C. § 1981.

**ANSWER:**  Paragraph 177 is a statement of law to which no response is required.  To the extent a response is required, AWS admits that complaints regarding race discrimination and harassment is protected activity under 42 U.S.C. § 1981.  To the extent not specifically admitted, AWS denies the remaining allegations in Paragraph 177.

178.    In retaliation, Defendants, unlawfully and without cause, and as a direct result of Plaintiff complaining about the incidents of race discrimination and harassment, interfered with the employment of Plaintiff and created an intimidating, offensive, and hostile work environment in violation of 42 U.S.C. § 1981.

**ANSWER:**  AWS denies the allegations in Paragraph 178.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   179.    Plaintiff reported and objected to Defendants' retaliation; thus, Defendants knew

2   about the retaliation and the affect it had on Plaintiff's employment and failed to take any action

3   to stop the retaliatory conduct.

4
    **ANSWER:**  AWS denies the allegations in Paragraph 179.

5
    180.    The conduct of Defendants was intentional, deliberate, willful, malicious, reckless,

6
7   and conducted in callous disregard of the rights of Plaintiff, entitling Plaintiff to punitive damages.

8   **ANSWER:**  AWS denies the allegations in Paragraph 180.

9   181.    By reason of Defendants' retaliation, Plaintiff is entitled to all remedies available

10  for violations of 42 U.S.C. § 1981.

11  **ANSWER:**  AWS denies the allegations in Paragraph 181.

12
                         **FOURTH CAUSE OF ACTION**
13                **DISCRIMINATION IN VIOLATION OF THE UADA**
                         *Against All Defendants*
14

15  182.    Plaintiff re-alleges and incorporates by reference each and every allegation in each

16  and every aforementioned paragraph as if fully set forth herein.

17  **ANSWER:**  Paragraph 182 is a statement of the case that does not require a response.  To

18  the extent a response is required, AWS denies the allegations in Paragraph 182.

19  183.    The claim is authorized and instituted pursuant to the provisions of the Utah

20
    Antidiscrimination Act, Utah Code Ann. § 34A-5-106 ("UADA"), for relief based upon the
21
22  unlawful employment practices of Defendants.

23  **ANSWER:**  Paragraph 183 is a statement of law to which no response is required.  To the

24  extent a response is required, AWS admits that Plaintiff brings a claim under the Utah

25  Antidiscrimination Act.  AWS denies the remaining allegations in Paragraph 183.

26

27

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 52
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

184.   Plaintiff complains that Defendants violated the UADA's prohibition against discrimination in employment based, in whole or in part, upon an employee's religion.

**ANSWER:** Paragraph 183 is a statement of law to which no response is required. To the extent a response is required, AWS admits that Plaintiff complains that Defendants violated the UADA's prohibition against discrimination in employment based, in whole or in part, upon an employee's religion.

185.   Defendants engaged in unlawful religious discrimination in the form of disparate treatment, harassment, and a hostile work environment based on Plaintiff's religion in violation of the UADA.

**ANSWER:** AWS denies the allegations in Paragraph 185.

186.   As a result of the Defendant's unlawful discrimination, Plaintiff has suffered lost wages and earnings, irreparable injury, emotional distress and humiliation, mental anguish, stress, and other compensable damage and will continue to do so unless and until this Court grants relief.

**ANSWER:** AWS denies the allegations in Paragraph 186.

### FIFTH CAUSE OF ACTION
### RETALIATON IN VIOLATION OF THE UADA
### *Against All Defendants*

187.   Plaintiff re-alleges and incorporates by reference each and every allegation in each and every aforementioned paragraph as if fully set forth herein.

**ANSWER:** Paragraph 187 is a statement of the case that does not require a response. To the extent a response is required, AWS denies the allegations in Paragraph 187.

188.   Plaintiff engaged in protected activity by reporting religious discrimination and race discrimination to his employer, including complaints to Defendant Amazon Web Services, Inc.'s Human Resources Department.

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 53
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

**ANSWER:** AWS denies the allegations in Paragraph 188.

2

3

189.    Defendants retaliated against Plaintiff by allowing continued harassment, intimidation, and ultimately terminating his employment.

4

5

**ANSWER:** AWS denies the allegations in Paragraph 189.

6

190.    Defendants engaged in unlawful employment practices prohibited by Utah Code

7

Ann. § 34A-5-106 by retaliating against Plaintiff for complaining of the aforementioned violations

8

of the UADA.

9

**ANSWER:** AWS denies the allegations in Paragraph 190.

10

191.    As a result of the Defendants' unlawful retaliation, Plaintiff has suffered lost wages

11

12

and earnings, irreparable injury, emotional distress and humiliation, mental anguish, stress, and other compensable damage and will continue to do so unless and until this Court grants relief.

13

14

**ANSWER:** AWS denies the allegations in Paragraph 191.

15

**PRAYER FOR RELIEF**

16

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

17

A)    An order finding that Defendants violated Title VII, Section 1981, and the Utah Antidiscrimination Act;

18

19

B)    A permanent injunction prohibiting Defendant from further violations of these laws;

20

21

C)    Monetary damages to compensate Plaintiff for his economic and emotional injuries in amounts to be proven at trial. These damages include, but are not limited to, lost wages and benefits, lost earning capacity, and mental and emotional harm including emotional and mental distress, anxiety, anguish, humiliation, a reduction in his ability to enjoy life, and pain and suffering;

22

23

24

25

26

D)    Pre- and post-judgment interest;

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

E)     Punitive damages pursuant to Title VII, Section 1981, and the Utah Antidiscrimination Act;

F)     Costs of litigation, including reasonable attorneys' fees and expert witness fees;

G)     Such other further and different relief as the Court deems just and proper.

H)     Plaintiff reserves his right to amend his claims in the nature and extent of his damages to conform to the facts that may be demonstrated either prior to or during the time of trial.

**ANSWER:** The foregoing represents Plaintiff's prayer for relief, to which responsive pleading is not required. To the extent a response is required, AWS denies that Plaintiff suffered any damages or is entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

Below are AWS's affirmative defenses. By setting forth these affirmative defenses, AWS does not assume any burden of proof as to any fact issue or other element of any cause of action that properly belongs to Plaintiff. AWS reserves the right to amend or supplement its affirmative defenses.

1.     Plaintiff's claims are barred in whole or in part as they fail to state a claim upon which relief may be granted.

2.     Plaintiff's claims are barred in whole or in part as they are based on legitimate, non-discriminatory actions.

3.     Plaintiff's claims are barred to the extent they are time barred as having been filed past the statute of limitations.

4.     Some or all of Plaintiff's claims are barred by the doctrines of waiver, estoppel, unclean hands, acquiescence, laches, and/or consent.

5.     Plaintiff has failed to plead specific damages with any particularity.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

6.      Plaintiff's claims are barred because the acts or omissions of AWS at all times relevant were in good faith, in the exercise of its reasonable business judgment, for good cause, and for legitimate business purposes.

7.      Plaintiff's claims are barred to the extent that AWS has discovered facts or may later discover facts which if known to AWS prior to the end of Plaintiff's relationship with AWS would have created additional grounds or bases for ending Plaintiff's relationship.

8.      Plaintiff's claims are barred to the extent that he failed to mitigate any potential damages.

9.      Plaintiff's claims are barred to the extent he did not exhaust the administrative requirements for each claim.

## AMAZON WEB SERVICES, INC.'S PRAYER FOR RELIEF

WHEREFORE, having fully answered Plaintiff's Complaint, AWS prays for the following relief:

A)      Plaintiff's Complaint be dismissed in its entirety;

B)      Plaintiff take nothing from AWS;

C)      AWS be awarded its reasonable attorneys fees and costs; and

D)      That the Court grant other relief as it deems appropriate.


DATED this 5th day of December, 2025.

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Defendants*

By */s/ Sheehan Sullivan*
    Sheehan Sullivan, WSBA #33189

    920 Fifth Avenue, Suite 3300
    Seattle, WA  98104-1610
    Telephone: 206.622.3150
    Fax:  206.757.7700
    Email:  sulls@dwt.com

AWS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR EMPLOYMENT DISCRIMINATION AND JURY DEMAND - 56
(Case No. 2:25-cv-01977-JLR)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax